IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRYAN KENNETH KELLY                                                    PLAINTIFF

                    v.                    Civil No. 09-5234

DR. HOWARD                                                              DEFENDANT

## MEMORANDUM OPINION

    This is a civil rights action brought pursuant to the provisions of 42 U.S.C. § 1983.
Plaintiff proceeds *pro se* and *in forma pauperis*.   The case is before me on the consent of the
parties (Doc. 11).

    Plaintiff is currently incarcerated in the Benton Unit of the Arkansas Department of
Correction (ADC).   The events that are the subject of this action occurred while Plaintiff was
incarcerated in the Washington County Detention Center (WCDC) from August to December of
2009.  Specifically, Plaintiff maintains Dr. Howard violated his constitutional right to adequate
medical care when he denied treatment for a hernia.

    On February 6, 2012, a bench trial was held.   The parties were given a period of time to
submit post-trial briefs on the issue of qualified immunity.   Defendant filed a post-trial brief
(Doc. 45).   Plaintiff did not file a post-trial brief.   The case is ready for decision.

### 1.  Evidence Presented

    At the trial, the Court heard the testimony of the following witnesses: (1) Bryan Kelly,
the Plaintiff; (2) Officer James Stout; (3) Nurse Rhonda Bradley; and (4) Dr. W.H. Howard, Jr.,
the named Defendant.

AO72A
(Rev. 8/82)

**Bryan Kelly**

Plaintiff testified he was incarcerated at the WCDC from August 25, 2009, to December 17, 2009, when he was transferred to the ADC. He was strip searched as part of the booking process; this included being asked to squat and crouch. Plaintiff testified he showed Officer Stout the hernia he had just discovered in his lower abdomen.

On September 11th, Plaintiff submitted his first medical request. Defendant's Exhibit (hereinafter Deft's Ex.) 3(B) at pg. 1. He testified he submitted the request because he believed he had a hernia that was getting larger. Id. In response, Plaintiff was prescribed Ibuprofen. Id. He received Ibuprofen from September 12th to September 26th. Id. at pg. 6. He was prescribed no further medication. Plaintiff testified that the hernia caused pain when he passed stool, laughed, coughed, sneezed, or climbed up and down from his bunk. The pain was worse when he was constipated or had indigestion.

On September 15th, Plaintiff was seen by Dr. Howard. Nurse Bradley was present. Plaintiff testified Dr. Howard informed him that his condition would not be treated but there would be follow-up on it.

Plaintiff testified he submitted no other medical requests about the hernia or any pain it was causing. He did not request a lower bunk. He testified he made no further attempts to obtain treatment because he believed he would be sent to the ADC quickly but it ended up taking several months.

When he arrived at the Diagnostic Unit of the ADC, a medical intake was done. However, Plaintiff testified the intake examination was not a complete physical. He testified he has not submitted any medical requests relating to the hernia since he was transferred to the ADC because the hernia is less painful. He does still experience some pain when he sneezes or

-2-

coughs.  He indicated he can also feel the hernia moving.  He likened the pain to having "gas."
Plaintiff has been able to get up and down from his bottom bunk, work, and engage in all the
activities of daily living.

### Officer James Stout

Officer Stout testified he booked the Plaintiff in on August 25, 2009.  Officer Stout
testified that, although he had no independent recall regarding it, the writing on the intake sheet
was his including a notation "hernia" in the area for medical complaints or injuries.  Deft's Ex.
2 at pg. 1.   The medical questionnaire also contained the following notation: "states he has a
possible hernia."  Id. at pg. 2.   Officer Stout testified that he would not have done a physical
examination but it may have been possible to see the hernia when conducting a strip search.

### Nurse Rhonda Bradley

Nurse Bradley testified she is a licensed practical nurse (LPN) and has worked at the
WCDC for nearly ten years.  She could not recall if she was present when Dr. Howard examined
the Plaintiff.  She did not recall Dr. Howard saying the hernia would not be treated.

According to Nurse Bradley, the inmate medical form is completed by the booking
officer.  Deft's Ex. 3(A) at pg. 1.  The medical form is reviewed by medical staff.  On August 26,
2009, Nurse Bradley saw the Plaintiff and asked if there were any medications or conditions that
she needed to be made aware of.  Plaintiff advised her he had been on INH, a tuberculosis
medication, while incarcerated in a different county.  Deft's Ex. 3(B) at pg. 5.

On September 11th, Plaintiff submitted a medical request form that indicated the hernia
was getting larger and hurting.  Deft's Ex. 3(B) at pg. 1.  Nurse Bradley responded that she had
put Plaintiff on the list to see the doctor.  Id.  She also prescribed Ibuprofen three times a day as
needed.   Plaintiff was seen by Dr. Howard on September 15th.

On October 8th, Plaintiff submitted a grievance.  Deft's Ex. 3(B) at pg. 3.  He wrote that Dr. Howard had told him that Washington County would not treated the hernia.  Id.  Since he was ADC committed, Plaintiff asked that he be transported to the ADC so he could receive medical treatment.  Id.

On October 9th, in response, Nurse Bradley indicated she would send the ADC the paperwork.  Id.  A health services request form was completed and sent to the ADC.  Nurse Bradley testified she never got a response to the request.  While she normally followed up on the requests sent to the ADC, there is no indication she did in this case.

According to Nurse Bradley, once an inmate is convicted and sentenced to a term of imprisonment, ADC permission is sought for any medical procedures or for any treatment that is rendered outside the jail.  If there is a medical emergency, treatment is rendered without first seeking ADC permission.  Nurse Bradley testified that if the hernia required emergency treatment, Plaintiff would have received the treatment.

### Dr. W.H. Howard, Jr.

Dr. Howard testified he has been a licenced doctor since 1970 and has concentrated mainly in family practice.  He has been employed as the WCDC jail doctor for nearly thirteen years.  In his practice, Dr. Howard testified he has seen many hernias.

Dr. Howard examined the Plaintiff on September 15th and diagnosed him with a left inguinal hernia.[1]  Deft's Ex. 3(B) at pg. 5.  He noted the situation should be watched and Plaintiff was directed to do no lifting.  Id.   No pain medication was prescribed because Plaintiff was

---

[1]A hernia is a condition in which "part of an organ is displaced and protrudes through the wall of the cavity containing it." http://englishoxforddictionaries.com/definition/hernia?region=us  (accessed on July 26, 2012).  Inguinal refers to a hernia in the groin area.  www.medilexicon.com/medicaldictionary.php?t=44570 (accessed on July 26, 2012).

-4-

already on Ibuprofen.  Additionally, Dr. Howard testified he rarely prescribed medication if he did not have to.

Dr. Howard noted a small bulge just above the pelvic area.  He testified the hernia may have caused Plaintiff discomfort when getting on or off of the bunk.  According to Dr. Howard, a hernia is reducible if it "can be put back into place."[2]  Plaintiff's was self reducible.  A strangulated hernia is one that swells and cannot be put back into place without surgical intervention. Dr. Howard testified that if Plaintiff continued to have problems, he would have been referred to a surgeon.

Dr. Howard testified he did tell the Plaintiff that the County would not pay to treat any medical condition unless treatment was medically necessary.  Dr. Howard stated that small hernias usually are not treated unless they become strangulated.  Strangulation may be indicated by a sudden onset of discomfort with redness and swelling.  At that point, it is an emergency and surgery must be done.

Dr. Howard testified he did not do routine follow up, but if an inmate continues to have a problem or continues to have pain, the inmate can ask to see Dr. Howard again.  He is on call 24 hours a day, seven days a week.  Dr. Howard stated he never heard any more about the hernia, so he assumed the condition had resolved itself.

## 2.  Discussion

At the hearing, Plaintiff specified he was suing Defendant in his individual capacity. Defendant maintains he is entitled to qualified immunity.

---

[2]"Standard medical treatment for a reducible hernia would be pain relief, as well as monitoring and . . . safety precautions as far as lifting goes."  Winslow v. Prison Health Services, 406 Fed. Appx. 671, 675-76, 2011 WL 167280, 4 (3d Cir. 2011).

AO72A
(Rev. 8/82)

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009).  The qualified immunity inquiry consists of two questions:  "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Johnson v. Carroll, 658 F.3d 819, 825 (8th Cir. 2011).  "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." Langford v. Norris, 614 F.3d 445, 459 (8th Cir. 2010).

I begin with the question of whether the facts support Plaintiff's claim that Defendant violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs.  "The Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." Vaughn v. Greene Cnty, Arkansas, 438 F.3d 845, 850 (8th Cir. 2006)."Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989)(citation omitted); see also Yellow Horse v. Pennington Cnty, 225 F.3d 923, 927 (8th Cir. 2000)(Inmates have a constitutional  right to have their serious medical needs attended to).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle  v. Gamble, 429 U.S. 97, 106 (1976).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively

-6-

serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997)).

It is not necessary for the Plaintiff to show a total deprivation of medical care. <u>Langford</u>, 614 F. 3d at 460. "Grossly incompetent or inadequate care can [also] constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment. To state a claim based on inadequate medical treatment the plaintiff must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." <u>Id.</u> (internal quotation  marks and citations omitted).

As noted above, Plaintiff was seen by Dr. Howard on September 15, 2009.  Dr. Howard diagnosed a left inguinal hernia.  Dr. Howard concluded the hernia was self-reducible and there was no need for surgical repair.  He indicated that a reducible hernia was one that could be pushed back into place behind the abdominal wall.  A self-reducible hernia was one that would go back into place itself.

Plaintiff was taking Ibuprofen for pain relief at the time of the visit.  Dr. Howard indicated that follow-up was necessary to see how the hernia progressed.  However, he testified that he did not routinely set follow-up appointments.  Instead, he assumed that, if an inmate was still having a problem, the inmate would submit another medical request.  Plaintiff submitted no other requests for treatment for the hernia and once he was transferred to the ADC sought no treatment there.

"The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010).  Plaintiff has failed to clear this threshold.  I cannot say that Dr. Howard's conduct violated Plaintiff's clearly established constitutional right to medical care for serious medical needs.  Anderson v. Creighton, 483 U.S. 635, 638-39 (1987)(noting that qualified immunity shields government officials from liability for civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated"); Langford v. Norris, 614 F.3d 445, 461 (8th Cir. 2010)("We must . . . examine the information possessed by the government official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law").  Dr. Howard examined Plaintiff and, in the exercise of his medical judgment, concluded no medical treatment was necessary other than medication for pain relief and an order not to do any lifting.  On the facts of this case, Dr. Howard is therefore entitled to qualified immunity.

**3.  Conclusion**

For the reasons stated, judgment will be entered for the Defendant.

DATED this 27thday of July 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-8-

AO72A
(Rev. 8/82)